**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **Criminal No. 05-337 (PLF)** |
| v. | : | |
| | : | |
| **WESAM AL DELAEMA,** | : | **Motions Hearing: 10/20/08** |
| also known as | : | |
| **WESAM KHALAF CHAYED DELAEME,** | : | |
| | : | |
| **Defendant.** | : | |

**MOTION _IN LIMINE_ FOR RULINGS PRIOR TO MOTIONS HEARING**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully moves this Honorable Court for a ruling on two discrete issues prior to the motions hearing scheduled for the week of October 20, 2008.  For the reasons set forth below, the Court should issue: (1) an order denying the defendant's motion to suppress the wiretap evidence, without a hearing; and (2) an order delineating the scope of questioning with respect to the defendant's "joint venture" claims.

**Argument**

I.    **The Court should deny the motion to suppress wiretap evidence as a matter of law.**

On February 12, 2008, the defendant filed a Motion to Suppress evidence derived from a Dutch wiretap on his cellular telephone and statements that he had made to Dutch authorities after his arrest ("Motion").  The government filed its opposition to this motion on April 14, 2008 ("Opposition").  In its Opposition, the government asked the defendant to withdraw his motion to suppress the wiretap evidence, given the lack of legal support for the defendant's position on that issue.  Opposition at 6 n.1.  In the absence of such a withdrawal, the government asked the Court to deny the defendant's motion to suppress wiretap evidence prior to the scheduled motions

hearing because, as a matter of law: (1) Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510-2520 ("Title III") does not apply to the Dutch wiretap evidence; (2) the Fourth Amendment – and therefore the "joint venture" doctrine – does not apply to foreign searches of the defendant, who is a nonresident alien; (3) the court lacks the supervisory power to exclude the evidence here based on a "shocks the conscience" test; and (4) the defendant has not alleged facts that would "shock the conscience." *Id.* at 6 n.1, 12-19.

On June 2, 2008, the defendant filed his reply brief ("Reply").  In his Reply, the defendant declined to withdraw his motion to suppress the wiretap evidence, providing three reasons. Reply at 3.  The defendant's first reason was that he wanted to preserve the legal issue of whether the Title III applies extraterritorially.  *Id.*  This is a purely legal question which the Court can decide without hearing evidence.

Second, even if Title III does not generally apply extraterritorially, the defendant asserted that the two exceptions noted in *United States v. Barona,* 56 F.3d 1087 (9th Cir. 1995) both apply and are both "fact-dependent."  Reply at 3.  To the contrary, as the government demonstrated in its Opposition, these two limited exceptions – *i.e.*, the "joint venture" and "shocks the conscience" theories – do not apply here as a matter of law.  *See* Opposition at 14-19.

Finally, the defendant stated that he was still investigating whether the Dutch authorities followed the letter of Dutch law during the wiretap application process.  Reply at 3.  However, as the government explained in its Opposition, even if the defendant were to allege that the Dutch authorities did not follow the letter of Dutch law, such an allegation would not form a sufficient legal basis for the court to invoke supervisory powers to exclude the Dutch wiretap evidence under a "shocks the conscience" theory.  Opposition at 16-19; *see, e.g., Barona*, 56 F.3d at 1092

("Even when no authorization for a foreign wiretap was secured[,] in violation of the foreign law itself, we have not excluded the evidence under this ['shocks the conscience'] rationale, nor should we."); *United States v. Mitro*, 880 F.2d 1480, 1483 n.4 (1st Cir. 1989) ("There is some debate as to whether a federal court has the authority to exclude evidence seized by foreign officials even in circumstances that shock the judicial conscience in light of *United States v. Payner*, 447 U.S. 727 (1980), where the Supreme Court held that a federal court could not exclude evidence under its supervisory power where the defendant would not have standing to seek exclusion under the Fourth Amendment.").

The defendant conceded in his Reply that "the facts underlying the wiretap application are not likely to be in much dispute," and he offered "to work with the government on preparation of stipulated facts to be considered by the Court in resolving this issue."  Reply at 3-4.  The parties both made a good faith effort to agree to a set of stipulated facts on this issue.  Nonetheless, because the parties hold very different views on which facts are relevant to the legal issues, the parties were not able to agree to a set of stipulated facts.

Accordingly, the government renews its request for the court to deny the defendant's motion to suppress wiretap evidence as a matter of law.

## II.    The Court should appropriately limit the scope of questioning on the "joint venture" issue.

The defendant has invoked a "joint venture" theory in support of his motion to suppress both the Dutch wiretap evidence and certain statements he made to Dutch law enforcement officials.  Motion at 14-15, 18-19.  Based on statements made by defense counsel in his Motion, in his discovery correspondence, and in other communications with government counsel, the

government believes that the defense intends to use the upcoming motions hearing as a fishing

expedition to attempt to question Dutch officials and the FBI about the content of

communications between the United States and the Netherlands that have no conceivable bearing

on the factual and legal questions at issue.  We seek a ruling from the Court appropriately

limiting the scope of questioning on this issue.

As the government explained fully in its Opposition, because the protections of the

Fourth Amendment are not available to a nonresident alien such as the defendant who is searched

overseas, *see United States v. Verdugo-Urquidez*, 494 U.S. 259 (1990), the defendant does not

have a legal basis to invoke the "joint venture" theory to suppress the Dutch wiretap evidence.

Opposition at 14-16; *Barona,* 56 F.3d at 1093 (joint venture exception "is based solely on the

Fourth Amendment" and anyone who wishes to invoke the joint venture exception must be

"among the class of persons that the Fourth Amendment was meant to protect").

Moreover, concerning the defendant's motion to suppress his statements to Dutch law

enforcement, as noted by the government in its Opposition and as Judge Huvelle recently

explained, "[i]n the absence of *active participation* by a United States official in the evidence-

gathering event, a joint venture can only exist when foreign officials are rendered *'agents'* of the

United States government . . . or when the cooperation was designed to evade the constitutional

requirements applicable to American investigators."  *United States v. Karake*, 443 F. Supp. 2d 8,

94 n.114 (D.D.C. 2006) (citations omitted) (emphasis added); Opposition at 40; *see also United

States v. Bin Laden*, 132 F. Supp. 2d 168, 187 (S.D.N.Y. 2001) (under the "joint venture"

doctrine, suppression of statements can result where U.S. officials did not ask any questions

directly, but instead used the foreign officials as their "interrogational agents" to circumvent the

requirements of *Miranda*).

Here, it is undisputed that United States officials did <u>not</u> actively participate in any of the Dutch interviews of the defendant that are the subject of the defendant's motion to suppress statements. FBI agents were not present for those interviews and they did not suggest any questions to the Dutch for those interviews. Indeed, the defendant conceded that he is unaware of any facts to support a theory that the Dutch were merely acting as agents of the United States in their questioning of him. Motion at 11-12, n.6. Nor has the defendant articulated any claim that the cooperation between the United States and Dutch in this investigation was designed to evade the constitutional requirements applicable to American investigators.

Despite his failure to make any allegations that would even constitute a "joint venture," the defendant has repeatedly signaled his intention to use the upcoming motions hearing to engage in a broad, virtually limitless, inquiry into the cooperation, communications and interactions between the United States and the Netherlands during the entire course of the investigation and prosecution of the defendant.

In his Motion, the defendant baldly asserted, without citation, that "[t]he joint venture and agency theories are not co-extensive, as the Dutch and U.S. law enforcement officers could be engaged in a joint venture without the Dutch necessarily be[ing] agents of the U.S. when questioning the defendant." Motion at 14 n.8. The defendant then proceeded to list the types of facts that he believes support a joint venture theory (and, ultimately, suppression of his statements to the Dutch), including the following: (1) the Dutch National Police contacted the FBI shortly after receiving information that the defendant was allegedly engaged in attacks against U.S. and Coalition troops in Iraq and allegedly involved in the murder of U.S. citizen

Nicholas Berg; (2) the FBI worked with the Dutch police to determine the defendant's actions

and associates; (3) the Dutch police passed information concerning the Dutch wiretaps to the

FBI; (4) Dutch investigators met with the FBI and exchanged information and documents; and

(5) after the arrest of the defendant, the FBI traveled to Amsterdam to review some of the

evidence against the defendant.  *See* Motion at 15.

As shown in the government's Opposition, the types of facts cited by the defendant have

all been consistently rejected by courts as establishing a joint venture.  *See United States v. Abu*

*Ali*, 395 F. Supp. 2d 338, 382-83 (E.D. Va. 2005) (court declined to find a joint venture despite

the fact that "the governments of Saudi Arabia and the United States . . . cooperate with each

other in foreign terrorist investigations" and that "[t]he U.S. and Saudi governments share

intelligence information, conduct investigations of terrorist acts, and . . . the Saudi government

will return individuals detained in Saudi Arabia to the United States");[1] *see also United States v.*

*Bagaric*, 706 F.2d 49, 69 (2d Cir. 1983), *overruled on other grounds by National Organization*

*for Women v. Scheidler*, 510 U.S. 249, 259 (1994) (allegation of "close cooperation" between

---

[1]     After the government filed its Opposition, the Fourth Circuit affirmed the district court's ruling on the joint venture issue in *United States v. Abu Ali,* 528 F.3d 210, 227-30 (4th Cir. 2008).  In *Abu Ali*, the FBI had provided a list of proposed questions to Saudi officials.  The Saudis did not ask most of the questions submitted by the FBI – but did ask six of those questions – as part of an interview of the defendant that was observed by the FBI.  The Saudi interrogators then conferred with the observing FBI officials at the conclusion of the interview. In concluding that this level of FBI involvement did not constitute the type of active or substantial participation required for a joint venture, the Fourth Circuit reviewed the existing legal authorities on joint venture and summarized as follows: "Although few in number, these cases do permit us to derive one general rule: mere presence at an interrogation does not constitute the 'active' or 'substantial' participation necessary for a 'joint venture,' but coordination and direction of an investigation or interrogation does."  *Abu Ali*, 528 F.3d at 229 (citations omitted).  The key factors to a majority of the Fourth Circuit panel was that the "Saudis were always in control of the investigation" and that they "never acted as a mouthpiece or mere conduit for their American counterparts."  *Id.* at 230 n.5.

U.S. and Canadian officials was insufficient to upset finding that Canadian detective conducted search "on his own country's authority and in connection with an ongoing Canadian investigation"); *United States v. Morrow*, 537 F.2d 120, 140-41 (5th Cir. 1976) (finding no joint venture where United States officers merely furnish information to foreign officials and noting that "normal lines of communication between the law enforcement agencies of different countries are beneficial without question and are to be encouraged"); *United States v. Mundt*, 508 F.2d 904, 906-07 (10th Cir. 1974) (upholding trial court's finding that joint venture did not exist where DEA officer had coordinated with Peruvian officers in operation and had played a "substantial part" in events leading up to the defendant's arrest); *United States v. Chavarria*, 443 F.2d 904 (9th Cir. 1971) (upholding confession obtained by Mexican police to transportation of a stolen car in foreign commerce, where California Highway Patrol had informed Mexican authorities that car had been stolen).

The defendant's unsupported theory concerning the scope of the joint venture inquiry is not even bounded by the types of facts recited in his Motion.  In a discovery letter to the government, dated February 27, 2008, the defendant stated his belief that the joint venture issue "can only be resolved after consideration of all the interactions between the agencies of the two governments, both civil and military."  Under this virtually limitless theory of joint venture, the defendant requested discovery of all actual investigatory materials passed between U.S. and Dutch law enforcement during the course of the investigation of the defendant, such as telephone numbers, link charts and photo-spreads.

The government declined to produce these materials, which were largely focused on the FBI's investigation of the hostage-taking and murder of U.S. citizen Nicholas Berg and which are

simply not relevant to the charges that the defendant now faces.  There is no possibility that the defense's joint venture argument will be strengthened in any way by knowing which telephone numbers were shared, whose names were on a link chart or whose photos were passed between the Dutch and the FBI.  Further, the government did not produce documents that reflected any actions or investigation conducted by the U.S. government to follow up on information passed by the Dutch during the investigation of the defendant, if those actions were not relevant to the charges against the defendant.  Nor did the government produce documents showing the nature of any requests made by the Dutch to the U.S. to provide assistance to the Dutch investigation of the defendant, as such materials could not possibly support the proposition that the Dutch were acting as mere agents of the U.S. in wiretapping and questioning the defendant.  In contrast, the production of such law enforcement information – not relevant to the charges against the defendant – would potentially have a tremendous chilling effect on cooperation between the U.S. and its foreign partners in this case and in others in the future.[2]

_____

[2]    The majority of the Fourth Circuit panel in *Abu Ali* warned against the potential ramifications of a broad ruling on the scope of the joint venture doctrine:

> [A] broad . . . holding could potentially discourage the United
> States and its allies from cooperating in criminal investigations of
> an international scope.  Both the United States and foreign
> governments may be hesitant to engage in many forms of
> interaction if the mere submission of questions by a United States
> law enforcement officer were to trigger full *Miranda* protections
> for a suspect in a foreign country's custody and control.  To impose
> all of the particulars of American criminal process upon foreign
> law enforcement agents goes too far in the direction of dictation,
> with all its attendant resentments and hostilities.  Such an
> unwarranted hindrance to international cooperation would be
> especially troublesome in the global fight against terrorism, of
> which the present case is clearly a part.

In a discovery letter dated September 11, 2008, the defendant voiced his disagreement with the government's analysis, claiming that "the level of detail in the shared information as well as the nature of the actions taken by the U.S. to comply with Dutch requests (and vice-versa) may well be relevant to the factual question of joint venture." Defense counsel further stated that he "will likely attempt to examine witnesses on these points and seek disclosure during the hearing of any documents we feel relevant to the joint venture issue regardless of whether you have chosen to disclose them pursuant to our Rule 16 request." Defense counsel reiterated his view, again without citation to any authority, that "the agency and joint venture theories are not identical."

In subsequent conversations with government counsel, defense counsel has indicated that he believes that even evidence of cooperation between the Netherlands and the United States *post-dating* the statements that he is seeking to suppress are potentially relevant to the joint venture issue. Thus, defendant has made clear that his view of joint venture knows no bounds, either conceptually or temporally.

Equally clear is that the defendant, who has failed to allege facts that would support suppression of evidence or statements under a legally cognizable joint venture theory, is intending to use the upcoming motions hearing as a fishing expedition to try to discover all he can about communications and cooperation between the United States and the Netherlands, including sensitive and irrelevant information concerning the Nicholas Berg murder investigation. *See United States v. Smoot,* 463 F.2d 1221, 1222 (D.C. Cir. 1972) (it was well within the court's discretion to limit defense counsel's cross examination of a government

_____

*Abu Ali,* 528 F.3d at 530 n.5.

witness on the ground that he was embarking on a fishing expedition).

Accordingly, the government seeks an *in limine* ruling limiting the scope of the defendant's examination of witnesses concerning the joint venture issue to questions relevant to whether: (1) the United States actively participated in the interviews of the defendant by Dutch law enforcement; (2) Dutch law enforcement were acting as mere agents of the United States in interviewing the defendant; and (3) the cooperation between the United States and Dutch in this investigation was designed to evade the constitutional requirements applicable to American investigators.

Respectfully submitted,

JEFFREY A. TAYLOR
UNITED STATES ATTORNEY
D.C. Bar No. 498-610

By:      /s/ _____
GREGG A. MAISEL
Assistant United States Attorney
D.C. Bar No. 447-902
National Security Section
555 Fourth Street NW, Room 11-453
Washington, DC 20530
(202) 514-7746
Gregg.Maisel@usdoj.gov

RACHEL CARLSON LIEBER
Assistant United States Attorney
D.C. Bar No. 456-491
National Security Section
555 Fourth Street NW, Room 11-909
Washington, DC 20530
(202) 353-8055
Rachel.Lieber@usdoj.gov

DAVID I. MILLER
Trial Attorney
N.Y. Bar # 2959369
Counterterrorism Section
U.S. Department of Justice
10th & Constitution Avenue, N.W.
Washington, D.C. 20530
(202) 353-2440
David.Miller@usdoj.gov

CAROLINE D. KRASS
Special Assistant United States Attorney
D.C. Bar No. 453-506
National Security Section
555 Fourth Street NW, Room 11-860
Washington, DC 20530
(202) 514-5623
Caroline.Krass2@usdoj.gov

Dated: October 6, 2008