UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

|                                         |   |                        |
|-----------------------------------------|---|------------------------|
|                                         | ) |                        |
| UNITED STATES OF AMERICA                | ) |                        |
|                                         | ) |                        |
| v.                                      | ) | CRIMINAL ACTION        |
|                                         | ) |                        |
| WESAM AL-DELAEMA                        | ) | NO. 05-CR-337 (PLF)    |

_____)

### DEFENDANT'S RESPONSE TO SENTENCING ISSUES

NOW COMES Defendant Wesam al-Delaema ("Delaema"), by and through undersigned counsel, and files this brief in response to the Government's Motion in Limine, and to address various other sentencing issues, as directed by the Court at the and of the April 15, 2009 hearing.

### A. This Court Need Not Resolve Guideline Issues if There is a Rule 11(c)(1)(C) Plea

As the defense has noted, this Court is not required to resolve sentencing guideline issues here. U.S.S.G. § 6B1.2(c) is only a Policy Statement. Moreover, U.S.S.G. § 6B1.1(c) allows this Court to accept a Rule 11(c)(1)(C) plea agreement even before a presentence report has been reviewed – making plain that the resolution of guideline issues is not a prerequisite in this context. Rule 11(c)(1)(C) pleas are a different breed, and they are not dependent on Guideline compliance for acceptance.

Case law also strongly bolsters this contention that Rule 11(c)(1)(C) pleas are in a category of their own, and that Guideline resolutions are not necessary. This issue appears to have most frequently arisen in the context of defendants who enter Rule 11(c)(1)(C) pleas that are accepted by a Court, but who then see their guidelines changed by favorable Guideline amendments, and then petition for relief. Ironically, it is the Government in those cases which typically argues that the Guidelines are irrelevant in this context.

In *United States v. Scurlark*, 2009 U.S. App. LEXIS 6468 (8th Cir. 2009), for example, the Government recently resisted a resentencing "because Scurlark's sentence was based on a binding Rule 11(c)(1)(C) agreement, not the subsequently amended Guidelines." *Id.* at *4. The Eighth Circuit agreed, in an opinion issued just last month:

> The district court undisputedly accepted the agreement. Under Rule 11(c)(1)(C), the court therefore was bound to sentence Scurlark pursuant to the terms of the parties' agreement, and § 3582(c)(2) became inapplicable because Scurlark's sentence was based on the agreement and not "a sentencing range that ha[d] subsequently been lowered by the Sentencing Commission."

*Id.* at *7 (emphasis added).

Just a few weeks ago, the Third Circuit reached the same conclusion, in *United States v. Sanchez*, 2009 U.S. App. LEXIS 6922 (3d Cir. 2009). There, the Court noted how "the record shows that Sanchez was sentenced based on a binding plea agreement under Rule [11(c)(1)(C)][1] and not on a range from the Sentencing Guidelines." *Id.* at *18. Like *Scurlark*, the *Sanchez* Court quoted from *United States v. Cieslowski*, 410 F.3d 353, 364 (7th Cir. 2005), and reiterated its explanation that "[a] sentence imposed under Rule 11(c)(1)(C) arises directly from the agreement itself, not from the [Sentencing] Guidelines." *Id.* at *15-16. In fact, most courts considering this issue have reached the same conclusion. *See Scurlark*, at *4-5 n.2 (citing cases).

In our own Circuit, this issue was addressed several years ago in *United States v. Heard*, 359 F.3d 544 (D.C. Cir. 2004). There, Judge Garland noted for the Court how "A sentence arising from a Rule [11(c)(1)(C)] plea, however, does not result from the determination of an appropriate guidelines offense level, but rather from the agreement of the parties: an agreement that is 'binding on the court once it is accepted by the Court.'" *Id.* at 548 (emphasis added). The D.C. Circuit made clear that, "although a court is 'free to consider the applicable Sentencing

---

[1] The Court actually references Rule 11(e)(1)(C), which was later redesignated as Rule 11(c)(1)(C). For simplicity, all such references will be cited herein under its current designation, as Rule [11(c)(1)(C)].

2

Guidelines range' in deciding 'whether to accept an agreed-upon sentence' under Rule [11(c)(1)(C)], it is 'not compelled to do so.'" *Id.* at 549 (emphasis added). As for the U.S.S.G. § 6A1.2 policy statement, the D.C. Circuit explicitly stated that it "was promulgated to guide, not to constrain, courts in deciding whether to accept or to reject a plea agreement and therefore is not binding on the district courts." *Id.* at 549 n.4 (citing *United States v. Goodall*, 236 F.3d 700 (D.C. Cir. 2001)). *See also United States v. Oliver*, 589 F. Supp. 2d 39, 40 (D.D.C. 2008) (Lamberth, J.: "the ultimate agreement is a contract signed by the parties and is not a result of the Court consulting the sentencing guidelines and sentencing the defendant accordingly.").

Thus, on two separate occasions – in *Goodall* and again in *Heard* – the D.C. Circuit has made plain that U.S.S.G. 6A1.2's suggestion about resolving guideline issues is not binding on a district Court in the context of a Rule 11(c)(1)(C) plea. While this Court may resolve such Guideline issues if it chooses, there seems little doubt that this Court is fully authorized to forego making such findings if it wants.

**B. Imposition of a 25-Year U.S. Sentence is Not a Mere "Academic" Exercise**

This Court's sentence, although not ultimately binding, will not simply be, as the Court appears to be concerned, merely an "academic exercise." This Court's sentence establishes an acceptable sentence that a U.S. Court considers appropriate for this offense and this offender, based on U.S. laws and U.S. sensibilities. That will be duly taken into account by the Dutch as a part of their imposition of their own resentence on Mr. Delaema based on Dutch laws and sensibilities – exactly as has been contemplated all along.

This is an extradition case. Everyone has known – from the moment the U.S. was allowed to take custody of Mr. Delaema – that he would be resentenced by the Dutch. Without this understanding, Mr. Delaema may never have been extradited. And no matter whether the

U.S. imposed on Mr. Delaema a sentence of life, 10 years or less, or something in between, it has always been known that a resentencing would occur.  Indeed, Mr. Delaema could have gone to trial, lost and gotten the maximum sente4nce, and still a full resentence would lie ahead.

This was always known to the parties during plea negotiations.  The defense never agreed that an ultimate sentence of 25 years imposed by the Dutch courts would be appropriate here. Throughout these negotiations (which also never involved any discussions of a possible plea to all counts, or a possible life sentence ) the numbers have always been negotiated and stated as an appropriate sentence only for the U.S. courts to impose.  Nor would a 25-year prison term even be in the ballpark for a comparable Dutch sentence.   In fact, the most notorious terrorism case in The Netherlands in past years has been the case against Samir Azzouz.  On October 2, 2008, Mr. Azzouz received a sentence of nine years from the appellate court in The Hague in the so-called Piranha case.  Prosecutors had demanded a punishment of 15 years.

A call by this Court for a Dutch court to mirror this Court's 25-year term would not be binding, but more importantly it would suggest an ultimate sentence that is literally off the charts when considered in comparison to Mr. Delaema's Dutch peers.  It is helpful – and enough – that the Dutch Court will know that this Court would impose a 25-year term on Mr. Delaema if no extradition applied.  The Dutch court will then endeavor to resentence Mr. Delaema within the context of the Netherlands' own system of justice.

In an opposite context, suppose the United States extradited an oil executive to Russia for a white-collar prosecution in the wake of the Khodoroski trial, or a CIA agent to Italy to face a pending indictment, or a woman to Saudi Arabia to face charges of adultery, for example.  In those situations, the U.S. might theoretically include a similar resentencing provision in the orders extraditing its U.S. citizens.  If so, it would undoubtedly give careful consideration to the

4

sentences imposed abroad on the U.S. citizens. But if the U.S. courts later imposed resentences that were different, and lower, than these other countries' courts had imposed, that would not be in disrespect to their judiciaries; it would merely be a recognition that the laws and sensibilities of our different countries may not always match. Such is the nature of extraditions.

If this Court were to ask Dutch officials to mirror its 25-year U.S. sentence, this would equate to asking them to treat Mr. Delaema as the very worst of the worst, with no redeeming qualities – asking them to literally impose a sentence that is over 2½ times longer than what Mr. Azzouz, perhaps its worst terrorist in its history, received. Respectfully, this Court should not, and need not in the name of institutional preservation, advise the Dutch courts on how to fit Mr. Delaema's case within a system of justice that none of the litigants here know. It is sufficient for this Court to declare 25 years an appropriate U.S. sentence, and then to let that be considered at Mr. Delaema's resentencing – just as the extradition order has always contemplated.

## C.  Defendant's White Phosporus Evidence is Relevant and Should Be Allowed

Finally, the defense continues to maintain that its evidence concerning white phosphorus use by the U.S. military in Fallujah – which the U.S. State Department initially denied (except for airborne illumination), but the Pentagon later admitted had been used in Fallujah as an offensive weapon, shortly after being confronted with the release of the documentary film, Fallujah: The Hidden Massacre – is relevant to Mr. Delaema's sentencing. Prior to his arrest, at various points within the period of the conspiracy, Mr. Delaema frequently spoke of how he believed chemical weapons had been used in Fallujah, and how he believed that the U.S. military was controlling the story of the war. As this Court noted, the key issue is not only Mr. Delaema's subjective state of mind, but also whether that belief was objectively reasonable. The story of the white phosphorus cover-up, if further developed, will vividly illustrate that it was.

5

If the United States' actions in Fallujah had been blameless, Mr. Delaema would have been more culpable in supporting their resistance.  Accordingly, the negative activities of the U.S. Government in this context represent fair mitigation, and are also the best way the defense knows to help the Court understand the horrors of Fallujah that drove Mr. Delaema to do what he did.  This is not a situation in which a jury will be prejudiced; this Court can consider this evidence for what it is worth.  A few more minutes spent discussing this topic, particularly after the hours of sentencing presentation from the Government, should be indulged by this Court.

Respectfully submitted,

_____/s/_____
Gregory S. Smith
D.C. Bar No. 472802
913 East Capitol Street, S.E.
Washington, D.C. 20003
(202) 460-3381
Co-Counsel for Defendant Wesam Al-Delaema

6